# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 13 2018, 10:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Julianne L. Fox
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of N.Y. (Minor Child); | September 13, 2018 |
| C.Y. (Father), | Court of Appeals Case No. 18A-JT-1001 |
| *Appellant-Respondent,* | Appeal from the Vanderburgh Superior Court |
| v. | The Honorable Brett J. Niemeier, Judge |
| Indiana Department of Child Services, | The Honorable Renee A. Ferguson, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause No. 82D04-1706-JT-1073 |

**Najam, Judge.**

# Statement of the Case

[1] C.Y. ("Father") appeals the trial court's termination of his parental rights over his minor child N.Y. ("Child"). Father present a single issue for our review, namely, whether the State presented sufficient evidence to support the termination of his parental rights.

[2] We affirm.

# Facts and Procedural History

[3] Child was born on September 15, 2014. In December 2015, the Indiana Department of Child Services ("DCS") received a report that Child was being neglected, that J.G. ("Mother") had been using methamphetamine daily, that Mother had used methamphetamine in front of Child, and that Father was incarcerated.[1] The report further indicated that Child had to be changed and bathed by someone else because he was "soaking wet from urine." Appellee's App. Vol. II at 4.

[4] DCS Family Case Manager ("FCM") Whitney Wester investigated the allegations. On December 22, FCM Wester interviewed Father at the county jail. Father told FCM Wester that Mother had a history of using methamphetamine and that Mother was currently living in a shelter with Child. The next day, FCM Wester interviewed Mother and tested Mother for drugs.

---

[1] Father was serving a thirty-day sentence for failing to pay child support.

Mother denied that she had used illegal substances, but she tested positive for methamphetamine, amphetamine, opiates, and THC. As a result, DCS removed Child from Mother's care and filed a petition alleging that Child was a child in need of services ("CHINS").

[5] On January 12, 2016, the trial court found Child to be a CHINS. Thereafter, on February 9, the court held a dispositional hearing. The court ordered that Father remain drug and alcohol free, that he submit to random drug screens, and that he participate in visitation with Child. Additionally, the court ordered that Child be placed with Father once Father could show that he had adequate heat in his residence. Sometime thereafter, Child was returned to Father's care.

[6] On July 12, Court Appointed Special Advocate ("CASA") Cindy Dubord and FCM Cindy Folson conducted a home visit. Father had used methamphetamine that day and was "messed up." *Id.* at 12. During the visit, Father was unhappy and used "some language." Tr. Vol. II at 53. CASA Dubord "felt threatened," and things "escalated from there." *Id.* At that point, someone called 9-1-1, and the police came. Father told the CASA and the FCM to "[j]ust take [Child]. I'm tired of everybody in my business." *Id.* That same day, DCS removed Child from Father's placement.

[7] After DCS removed Child, Father participated in supervised visits with Child for a while. Between May 26 and June 30, 2017, a home-based case worker offered Father six visits with Child, but Father only attended three. As a result, on June 30, the case worker put the case on hold and stopped all supervised

visits due to Father's noncompliance. In October, Father turned himself into police on an outstanding warrant.[2] When Father was again released from jail, Father asked FCM Rianna Cearfoss-Nutter to reinstate services. FCM Cearfoss-Nutter referred Father for a drug-abuse assessment and treatment. She also put in a referral for drug screens. Father attended the first treatment session and one other appointment, but he missed four appointments. He also completed only three of nine drug screens.

[8] After Father failed to fully comply with services, on June 23, 2017, DCS filed a petition to terminate Father's parental rights over Child.[3] Following a hearing, the trial court granted the petition on April 3, 2018. In support of its order, the trial court entered the following findings and conclusions:

**FINDINGS OF FACT**

* * *

**B. FACTS RELATING TO INITIAL REMOVAL OF CHILD, CHINS ADJUDICATION & DISPOSITIONAL ORDER**

* * *

---

[2] A warrant had been issued for Father's arrest in June 2017 because Father had missed a court date.

[3] The trial court terminated Mother's parental rights over Child in a separate order after a separate proceeding.

5. [Father] is the legal father of [Child].

6. On December 22, 2015, the DCS received a report of abuse and/or neglect alleging that Mother was using illegal substances while caring for the child and that Father was incarcerated.

7. On December 23, 2015, Mother tested positive for methamphetamine, amphetamine, opiates[,] and THC. Mother and the child had been residing at a homeless shelter in Evansville, Indiana for approximately one month. Mother and child had resided in a different homeless shelter prior to that. Father was incarcerated at the Vanderburg County Jail for failure to pay child support and could not take custody of the child. The child was removed at that time.

8. On December 28, 2015, the DCS filed a Verified Petition Alleging that the child was in need of services under cause number 82D04-1512-JC-002205.

* * *

10. The child was adjudicated to be a Child in Need of Services on January 12, 2016, and disposition was held on February 9, 2016. The dispositional decree was entered on February 16, 2016.

11. On February 9, 2016, Father was ordered to remain drug and alcohol free, submit to random drug screens, participate in supervised or monitored visitation and sign all releases for DCS and CASA.

12. Further, on February 9, 2016[,] DCS was granted wardship of each child.

## C. FACTS RELATING TO CHILD'S CONTINUED REMOVAL FROM PARENTS' HOME AND CARE: REASONABLE PROBABILITY OF PARENT NOT REMEDYING REASONS FOR REMOVAL, THREAT TO CHILD'S WELLBEING

1. Father obtained placement of the child shortly after the dispositional hearing when he was able to prove his home had adequate heating. The child's placement lasted until July 12, 2016.

2. On July 12, 2016, Father injected methamphetamine and was observed to be under the influence while caring for the child. Father became irate and vulgar with the Family Case Manager and CASA Volunteer who came to his home for an unannounced visit with the child. Father later found out that he had also injected salt with the methamphetamine and was shortly thereafter hospitalized. Father sustained significant liver damage as a result of the salt being injected with the methamphetamine.

3. At trial, Father admitted methamphetamine use up to "a few days ago" and that he would not test clean on the day of the hearing. Father denied an addiction to methamphetamine, but admits a sixteen (16) year history of use. Father claims he does not need treatment and failed to complete treatment during the course of the underlying CHINS case. At trial, Father testified that he could stop using whenever he wanted; he had just chosen not to do so.

4. During the underlying CHINS case, Father continued his relationship with the child's mother. Mother also had a significant drug problem, and Father testified that he preferred to work while she would go to substance abuse treatment. Father was often out of town and failed to regularly visit the

child. Father would lose contact with the FCM for months at a time during the underlying CHINS while working for multiple different construction companies.

5. At best, Father's relationship with Mother was tumultuous. Father admitted that he often used because of the relationship problems between himself and Mother. At trial, Father seemed to blame Mother for his continued methamphetamine use. Father lacked any insight into the depth of his continuing addiction to methamphetamine and the impact his methamphetamine use has had on his child.

6. Father's continuing to use illegal, addicting substances, knowing that his parental rights would be terminated if he failed to stop, evidences the depth of Father's addiction and inability to maintain sobriety. Father is, admittedly, "headstrong" and refused to acknowledge his behaviors have led him to where he is at the time of the hearing. In response to being asked why he would use so close to his trial date, Father simply stated, "I already know what's going to happen today." So, at least on some level, Father acknowledges he has failed to do what was necessary to get his son back.

7. Father's last contact with the child was in June of 2017. Father admitted that he had "quit going to all of it," referring to visits, drug screens, and other services.

8. During the underlying case, Father often missed visits with the child. From May 26, 2017[,] to June 30, 2017, Father was offered six visits, but only attended three. The visitations were stopped due to Father's non-compliance and failure to attend visitation. Father claimed that he "let [Mother] talk [him] out of it" when answering why he did not attend visitation regularly. Again, Father blames Mother for his own

behavior, lacking insight into his responsibilities as a father and adult.

9. In October of 2017, after the filing of the termination petition, Father asked to reinstate services. The DCS FCM put in referrals for substance abuse treatment and random drug screens, but Father failed to follow through and complete the services. Father failed to complete random drug screens and failed to complete treatment.

10. During the course of the underlying CHINS, Father struggled with maintaining stable housing. At the time of the hearing on termination, Father was living with his mother, and admitted that he was not prepared for his child to return to that home.

11. Overall, Father has failed to remedy the situation that brought about the removal of the child. Based on the patterns of behaviors and continuing pattern of substance abuse by both Father [sic], the Court finds that there is a not a reasonable probability the situation which brought about the removal of the child is likely to be remedied. The Court finds that Father's past behavior is the best predictor of his future behavior. Simply put, Father lost the child due to methamphetamine [abuse], and, as of the date of the trial, a year and a half later, Father would still test positive for methamphetamine. The Court cannot state with any certainty that Father's methamphetamine use will cease at any point in the near future.

12. Further, Father's behaviors during the underlying CHINS cases pose a threat to the well-being of the child[]. The risk of Father relapsing is very high, given Father's past performance, and the Court is not willing to place this child back into a home where the caregiver is too intoxicated to

provide the child with what he needs to thrive. To allow the continuation of the parent child relationship with Father would pose a threat to the well-being of the child.

## A. CHILD'S BEST INTEREST & DCS PLAN FOR CARE AND TREATMENT

1. The child's foster parents provided support, care, guidance, and supervision in the absence of parents for the majority of the underlying CHINS matter;

2. The child is strongly bonded with the foster parents;

3. The child is doing well in the care of the current foster parents;

4. DCS' plan for the child is that he be adopted by the current foster parents;

5. It is in the best interests of the child to be adopted due to the inability of the Father to provide appropriate care and supervision for the child;

6. DCS and the Court Appointed Special Advocate (CASA) believe that adoption by foster parents is in the child's best interest. [Child's] placement changed five (5) times over the course of the underlying CHINS case, and each change of placement affected the child negatively. [Child] deserves a stable, permanent home, which is what he has at his current foster family's home. The Court finds that adoption by the foster parents is in the [Child's] best interest;

7. Father's pattern of substance abuse and criminal activity indicates that maintaining a parent-child relationship with Child is not in the best interests of Child;

\* \* \*

**JUDGMENT**

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED**:  That DCS' petition for termination of parental rights is granted; and that the parent-child relationship between the child . . . and the father . . . is hereby terminated.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED**:  All rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, parenting time, or support, pertaining to the relationship are permanently terminated.  Either parent's consent to the adoption of each child is not required.

Appellant's App. Vol. II at 16-24 (some alterations in original).  This appeal ensued.

# Discussion and Decision

[9] We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a

termination.  *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).  Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened.  *Id.*  Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities.  *Id.* at 836.

[10]     Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2018).  DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'"  *R.Y. v. Ind.*

*Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[11]    When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[12]    Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

On appeal, Father contends that the trial court erred when it concluded that: the conditions that resulted in Child's removal will not be remedied; there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Child; and termination is in Child's best interests. Because the statute is written in the disjunctive, we need not address the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of Child. I.C. § 31-35-2-4(b)(2)(B) (the petition must allege "that one (1) of the following is true").

### *Conditions that Resulted in Child's Removal will not be Remedied*

In determining whether the evidence supports the trial court's conclusion that Father is unlikely to remedy the reasons for Child's removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support,

and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[15] Father does not challenge any of the trial court's findings in support of this conclusion. Rather, Father maintains that

> DCS failed to prove that [Father's] separation from the mother would not remedy the cause for removal of [Child]. At the time of the factfinding hearing, [Father] was living with his mother until he had saved enough of his income to secure his own housing. [Father] testified that he would be able to care for [Child] without assistance, and had done so in the past. [Father] testified that his sporadic participation in services stemmed from conflict in his relationship with [Child's] mother. However, [Father] also testified that he had made significant changes in his life, that his relationship with the mother was over, and that the two being permanently separated would allow him to focus on the [Child] without succumbing to the pressures that the relationship with the mother caused in his everyday life.

Appellant's Br. at 13-14 (citations omitted). But Father's argument amounts to a request that we reweigh the evidence, which we cannot do. Instead, we must determine whether the evidence most favorable to the judgment supports the trial court's conclusions. *In re D.D.*, 804 N.E.2d at 265. We hold that it does.

[16] It is undisputed that Father has a long history of using methamphetamine. Indeed, he admitted at trial that he has struggled with methamphetamine use for sixteen years. Despite this history of substance abuse, the trial court placed Child back into Father's care after Child was found to a be a CHINS on

January 12, 2016. But shortly thereafter, on July 12, Father again used methamphetamine and sustained significant liver damage as a result. DCS again removed Child from Father's care. And Father admitted that he had again used methamphetamine just "two days" prior to the hearing on the petition to terminate his parental rights and that he would not be clean if he took a drug test on the day of the hearing. Tr. Vol. II at 13.

[17] Further, in October 2017, Father asked the FCM to put services back in place. The FCM made a referral for a drug-abuse assessment and treatment and for random drug screens. However, Father missed four appointments after only having attended the initial appointment and one other appointment. Additionally, Father only completed three of nine drug screens. Father admitted that he just "quit goin' to all" of the drug screens. *Id*. at 18. When asked whether there would be any value in continuing his drug-abuse treatment, Father responded: "No, and even as an addict I wouldn't believe that it would be . . . beneficial to me to take any more classes, nor would I think it would be beneficial for me to go into inpatient treatment. Because I do well away from it." *Id*. at 61.

[18] Here, DCS removed Child because Father had used methamphetamine while caring for Child. Based on Father's long history of substance abuse, the fact that Father continued to use methamphetamine up to just days before the hearing, and the fact that Father does not believe that substance-abuse treatment would be beneficial because he believes he does well away from it, we

cannot say that the trial court clearly erred when it concluded that the conditions that resulted in Child's removal will not be remedied.

### *Best Interests*

[19] Father also asserts that the trial court clearly erred when it concluded that the termination of his parental rights is in Child's best interests. In determining what is in Child's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010). A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *Evans v. St. Joseph Cty. Off. of Fam. & Child. (In re A.L.H.)*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child." *In re A.K.*, 924 N.E.2d at 224. The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the continuation of the parent-child relationship is contrary to the child's well-being, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *See Stewart v. Ind. Dep't of Child Servs. (In re J.S.)*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[20] Father contends that termination is not in Child's best interests but, rather, he asserts that "it was in the best interests of the child that [Father] be given additional time to complete services and participate in [Child's] life without the

influence of Mother." Appellant's Br. at 14. But, again, Father's contentions on this issue amount to nothing more than a request that we reweigh the evidence, which, again, we cannot do.

[21] The undisputed evidence shows that Father has failed to complete services, failed to complete random drug screens, and failed to complete treatment. Father has not visited with Child since June 2017. Based on his drug use, Father has not provided Child with a safe and stable environment. And during the course of the underlying proceedings, which lasted well over two years, Child had been placed with five different foster families. Child needs permanency. FCM Cearfoss-Nutter testified that adoption was in Child's best interest because "[h]is foster parents provide a safe and stable environment for him free of substance abuse" and because Child is "thriving." Tr. Vol. II at 46. Additionally, the CASA testified that adoption is in the best interest of Child because Child is now in a loving and stable environment. The totality of the evidence, including Father's long history of substance abuse that he does not believe he needs help addressing and the fact that Child is thriving in his current environment, supports the trial court's conclusion that termination of Father's parental rights is in Child's best interests.

[22] Affirmed.

Crone, J., and Pyle, J., concur.